THOMAS F. PERKINS, ADMINISTRATOR, ETC., *v.* ELLA M. GUY.

1. LIMITATION OF ACTIONS. *Lex loci. Lex fori. The right. The remedy.*
   A statute of limitations of the *loci contractus* cannot be pleaded in bar in a foreign jurisdiction, where both parties were resident in the *loci contractus* during the whole statutory time, so as to make the bar complete there, unless such statute go to the extinction of the right itself, and not to the remedy only.

2. SAME. *Common-law rule.*
   The rule of the common law is that the limitation of actions depends on the law of the *forum*, and not on the law of the state or country where the contract was made.

3. SAME. *Remedy of contracts.*
   A statutory bar of one state cannot be pleaded in another, where the bar only affects the remedy of the contract sued on.

4. SAME. *Right of action.*
   If the right of action on a contract has been extinguished by a statute of limitations in another state, where the parties reside, the courts of this state will give effect to that statute in any suit brought in this state on such contract.

5. PLEADINGS. *Demurrer.*
   A demurrer admits all matters of fact well pleaded, but does not admit conclusions of law stated by the pleader.

6. CONFIDENTIAL COMMUNICATIONS. *Attorney and client.*
   A statement made to an attorney, in the presence and at the instance of his client, by a third party, is not a confidential communication.

7. PRACTICE. *Withdrawal of general issue.*
   A withdrawal of the general issue after all the testimony in the case has been heard is a waiver of all right to predicate error on the admission of testimony under that issue.

8. SAME. *Opening and conclusion of argument.*
   The party holding the affirmative of an issue, and upon whom is the burden of proof, has the right to open and conclude the argument to the jury. And the

*status* of the parties cannot be changed by the withdrawal by either party of any pleading in the case. But a judgment will not be reversed because such right has been denied, unless the denial thereof has produced a wrong or injustice.

9. SAME. *Argument to jury. Statement of facts not proven.*

Counsel should not be permitted, in arguments to the jury, to state or comment on facts not proven. The judge should, *suo sponte,* interpose and correct any such irregularity, and if he does this in a case, a new trial will not be granted because of such statements and comments made by the counsel of the prevailing party.

ERROR to the Circuit Court of Marshall County.

Hon. JOHN C. ATKINSON, Judge, specially presiding, by agreement of parties, Hon. J. W. C. Watson having been of counsel in the case.

This was an action of *assumpsit,* commenced March 1, 1876, by Ella M. Guy against Thomas F. Perkins as administrator of the estate of Mrs. Dawson, on a claim of $5,000 for money loaned in November, 1866.

Pleas of *non assumpsit* and payment were filed, and also the following special plea of the statute of limitations, viz. :

"And for a further plea in this behalf the said defendant, by attorney, comes and says *actio non,* because he says that the statute of limitations of the state of Tennessee upon plaintiff's alleged cause of action is and was six years, and that the full period of six years after plaintiff's alleged cause of action accrued had expired before the death of defendant's said intestate, Eliza M. Dawson, deceased, during the whole of which said period of six years both plaintiff and said intestate resided continually in said state of Tennessee ; and defendant avers that the effect and operation of said statute of limitations of six years of the state of Tennessee was to bar any recovery upon said alleged cause of action, and wholly to extinguish and destroy the same, if it ever existed. Defendant further avers that plaintiff was, at the time said alleged cause of action accrued, and hath been continually since, hitherto and still is, a citizen and resident of said state of Tennessee, and that said intestate, Eliza M. Dawson, was likewise a citizen and resi-

dent of said state of Tennessee when said · cause of action accrued, and so continued to be for a period of more than six. years thereafter, to wit, until her death, which occurred at her home in said state on the —— day of ——, 1875 ; and this said defendant is ready to verify.   Wherefore,'' etc.

To this plea plaintiff demurred, assigning as special grounds :

1. That the plea sets up the statute of limitations of another· state as a. defense here ; and,

2. That it states deductions and conclusions of law of· another state, and not the law itself.

This demurrer was sustained, and judgment *respondeat ouster·* rendered.   Defendant declined further plea of this matter.

After all the testimony was before the jury the defendant. withdrew the plea of general issue, and claimed the opening· and closing of the argument.   The court refused this, and the· defendant excepted.

On the trial, H. W. Walter, as a witness, testified sub-- stantially as follows, viz. :

One day, about November, 1867, Miss Guy called on him to· prosecute, before a military court, a claim for some cotton said to have been assigned to her by Mrs. Dawson.   Neither· the claim nor assignment was in writing.   He advised her that Mrs. Dawson had better come to town and furnish him with some evidence of the claim and its assignment.   She accord- ingly came the next day, with Miss Guy, and in her presence stated that she owed Miss Guy $5,000 borrowed money, and had transferred fourteen bales of cotton, which had been. seized by military officers, in part payment of this debt.. Witness stated that Mrs. Dawson was not his client when she made this statement ; that afterwards she joined Miss Guy in the petition to aid her in recovering the cotton, and that, when the claim was afterwards severely contested, she, possessing· very superior business qualifications, took the management of· the matter, and after it was terminated paid him his fee.

Defendant objected to the introduction of this evidence, on: the ground that it was a confidential communication to witness,.

as a lawyer, by Mrs. Dawson. The objection was overruled, and defendant excepted.

The following appears in the bill of exceptions, viz. :

" Plaintiff's counsel, in his closing argument to the jury, stated that his client, Miss Guy, a pure, high-minded, accomplished, and elegant lady, had sworn to the account sued on against Mrs. Dawson, defendant's intestate, and that she would not have done so if every dollar claimed had not been due, and they would find her guilty of perjury if they found for defendant. Whereupon defendant's counsel called upon the court to exclude said statement of plaintiff's counsel from the consideration of the jury ; and, thereupon, the court said to counsel, in the presence of the jury, that there was no evidence before the jury of plaintiff's swearing to her account against Mrs. Dawson, and counsel had no right to talk about it in argument. Said counsel then stated to the jury that the presumptions were that Miss Guy had probated the account ; but the court stopped counsel, and refused to let him say anything to the jury about the probated account, and said account was not taken out by the jury when it retired to consider of its verdict."

The probated account was filed with the declaration, as required by the statute.

The jury found for the plaintiff the amount claimed.

*Watson & Smith*, for the plaintiff in error.

1. The main question in the case is presented by defendant's plea, which sets out the following facts : That the statute of limitations of Tennessee upon plaintiff's demand was and is six years ; that this period after plaintiff's cause of action accrued had expired before the death of defendant's intestate, during the whole of which time both plaintiff and said intestate resided in Tennessee continuously ; and that the operation and effect of said statute of limitations of Tennessee were to wholly extinguish and destroy said cause of action, if it ever existed. Said plea further stated that plaintiff is still a citizen of Tennessee, and that defendant's intestate likewise continued

a citizen and resident of said state until her death, in February 1875.

The defendant's demurrer should, we submit, have been overruled. Although the earlier cases hold that the law of one state which extinguishes the remedy only does not necessarily extinguish the remedy upon the same cause of action in another state, yet they also hold that where the foreign law extinguishes " the right," the case is different, and the " bar " under the foreign law can be pleaded to the action wherever suit is brought. That the law of Tennessee falls within the latter class is admitted by the demurrer. See Ang. on Lim., 2d. ed., 64; *Shelby* v. *Guy,* 4 Wheat. 361–371; *Fear's Admr.* v. *Sykes,* 6 Geo. 633; *Townsend* v. *Jenneson,* 9 How. 413; *Brown* v. *Parker,* 26 Wis. 21; *Davis* v. *Minor* et ux., 1 How. (Miss.) 186.

The doctrine as to the law of a foreign state which affects " the remedy " only arises out of the distinction, upon which much stress was formerly laid, between " the right " and " the remedy." This distinction is no longer recognized by courts. In *Davis* v. *Minor,* above cited, Judge Sharkey says: " If a party be deprived of his remedy, in what does his right consist? Whatever the rule may be in morals, in a purely legal point of view I think it difficult to imagine the existence of a right without some adequate remedy.   *   *   *   If it be true that the remedy is a constituent part of a right, and they cannot exist separately, must it not follow that whatever destroys the one must destroy the other?" 1 How. (Miss.) 188.

In *Van Hoffman* v. *City of Quincy,* 4 Wall. 554, the court holds the distinction to be one rather of form than substance. See, also, *White* v. *Hart,* 13 Wall. 653; *Gunn* v. *Barry,* 15 Wall. 623. The doctrines growing out of this distinction, we submit, should also be abolished.

In *Shelby* v. *Guy,* 11 Wheat. 371, title to a slave acquired by five years' possession in Virginia was held valid in an action brought in Tennessee, on the ground that a good title was vested in Virginia, and, being good there, was not vitiated by

removal. Our own Supreme Court has repeatedly held that the " bar " created by the statute of limitations is as effectual as payment or any other defense ; and, when once "vested," cannot be taken away even by the Legislature. *Woodman* v. *Fulton*, 47 Miss. 684 ; *Davis* v. *Minor*, 1 How. (Miss.) 189.

The statute of limitations of Tennessee is substantially the same as that of Mississippi, under which the bar, when it has once attached, is clearly a vested " right " in the debtor. Indeed, if the remedy only were affected by statutes of limitations like those of Mississippi and Tennessee, to hold that the right to plead the bar, when it once attaches, cannot be taken away by the Legislature is manifestly absurd. If the contract remains in full force and unimpaired, save as to the remedy, surely upon a restoration of the remedy the contract could be enforced. Nor could the party bound by the contract complain of this restoration of the remedy. In *Davis* v. *Minor*, above cited, one law took away the remedy, a subsequent law undertook to restore it, and, if the first law touched the " remedy " only, upon the passage of the second law, restoring the remedy, the rights of the parties must have been the same precisely that they were before it was taken away. This proposition is too plain for argument. The doctrine underlying and explaining the cases cited, however, is clearly stated by Judge Sharkey, in *Davis* v. *Minor*, 1 How. (Miss.) 189, when he says : " The bar created by the statute is as effectual as payment."

In one of the leading cases on this subject, Chief Justice Shaw uses the following language :

" Whether the law of prescription or statute of limitations, which takes away every legal mode of recovering the debt, shall be considered as affecting the contract like payment, release, or judgment, which in effect extinguish the contract, or whether they are to be considered as affecting the remedy only, by determining the time within which a particular mode of enforcing it shall be pursued, were it an open question, might be one of some difficulty." 11 Pick. In Missis-

sippi, under a statute similar to the statute in Tennessee, Judge Sharkey, looking rather to reason and principle than to precedent, has settled it that the bar of the statute of limitations is as effectual as payment, and that it is a vested right, of which a party cannot be deprived by subsequent legislation.

The fact is that *Bulger* v. *Roche* can no longer be regarded as authority. In that case both parties resided in Nova Scotia until the debt was barred under a law that in express terms wholly extinguished the plaintiff's right of action. Yet the learned Chief Justice Shaw held that, after a change of domicile by removal to Massachusetts, the contract could be enforced in the tribunals of that state. That the law is now settled otherwise, see *Winburn* v. *Cochran*, 9 Texas, 125 ; 28 Wis. 21 ; 9 How. 413 ; 6 Geo. 633 ; 1 Coldw. 453 ; Ang. on Lim., 2d ed., 68, 69.

Leaving the adjudicated cases on this subject out of view for a moment, we submit that the views contended for by counsel for defendant in error are in contravention of the public policy of our state, particularly at this epoch in her history. To hold that the moment an immigrant enters our borders stale demands of every sort revive against him — that the laws which had afforded him protection and repose in some other state are of no avail here — might certainly, in some instances, be the means of turning away from our state men who would otherwise settle in our midst and make useful citizens. Statutes of limitations are statutes of repose, based upon a presumption of payment from lapse of time. How and why is it that this presumption is not as strong in Mississippi the moment after, as it was in Tennessee the moment before, a party crossed our lines?

In our opinion the plea under consideration presented a valid defense, and the demurrer should have been overruled.

2. The court erred in permitting the testimony of Colonel H. W. Walter to go to the jury. It seems to us clear that the admissions of the defendant's intestate to which the wit-

ness deposed were made by her at a time when the relation of client and attorney existed between Colonel Walter and said intestate. True, the witness states that he was first employed by Miss Guy to recover some fourteen or fifteen bales of cotton which had been attached by the creditors of Dawson & Crum, and which Miss Guy claimed by purchase from Mrs. Dawson, and that Mrs. Dawson was sent for, at his suggestion, merely as a witness. The cotton had been sold to Miss Guy by Mrs. D., in part payment of the debt on which the suit was brought; if the title failed, it was no payment, and Mrs. D. was abundantly solvent. The proof shows, moreover, that Mrs. D. took charge of the case at an early stage of the proceedings; that she paid witness his fee of $250, and that there was other property involved in the litigation, in which Miss Guy had no interest. These facts, we submit, are entitled to more weight than the opinion of the witness, and show conclusively that Mrs. D. was his client when the conversation occurred to which the witness testified. That our objection to his testimony should have been sustained, see *Longsfield* et al. v. *Richardson & May*, 52 Miss. 447; *Parkhurst* v. *McGraw*, 24 Miss. 135; *Grester* v. *Garland*, 11 Smed. & M. 136; 1 Greenl. on Ev., sec. 240 and note, and sec. 285; *McManus* v. *The State*, 2 Head, 213; *McCall* v. *Smith*, 2 McCord, 223.

Again, the court erred in refusing to permit the defendant, relying solely on the plea of "payment," to open and conclude the argument of the case before the jury. By the withdrawal of "the general issue" the full effect of plaintiff's testimony was admitted, so far as it tended to establish the contract sued on, and we cannot see that the case did not then stand as if payment had been relied on exclusively from the beginning. It is needless to cite authorities to the effect that the party holding the affirmative is entitled to the opening and conclusion of the argument.

The next ground upon which we claim a reversal of this case arises out of the statement made by plaintiff's attorney,

in his closing argument, of facts not in proof before the jury, and which must have had a potent influence in bringing them to the conclusion which they reached.

We do submit, in all earnestness, that for this abuse of the usages regulating trials by jury — this violation of the rules of evidence — whether with or without the consent and approbation of the court, the verdict in this case should be set aside and a new trial granted. The interference by the court, when called upon by defendant's counsel, could not by possibility have eradicated the effect of these improper statements. Their influence was instantaneous and irrevocable, and it must be held that, in the first place, they were made with the court's consent. The entire trial of a cause in the court-room, in all its details, is under the immediate direction and control of the court, and it is the highest duty of the presiding judge to see to it that the purity of trial by jury is in no way impaired. To hold that a party to a suit cannot, by his counsel, be guilty of such misconduct in the progress of the trial as to vitiate the verdict, would be to place courts and the rights of parties virtually in the hands of lawyers. It frequently happens that facts, which, if known to the jury (it matters not through what channel), would exercise a controlling influence, are condemned by the law as improper for their consideration. But if counsel are permitted to inject such facts into their arguments, knowing that the only penalty they incur is a possible rebuke from the court, the rules of evidence might as well be abolished. In view of the nature of this case, it was of peculiar importance to the defendant that the rule laid down in these authorities should be rigidly enforced; that the safeguards thrown by law around the estates of decedents should be respected, and the plaintiff's individual character kept out of the minds of the jury as far as possible.

*Henry Craft,* on the same side.

The case presents fairly and fully the question, Does the bar of the statute of limitations of Tennessee avail as a defense in the courts of Mississippi? What reason, principle, and logic

seem to indicate as the proper answer, however the decisions of the courts may have been, is shown in Cooley on Constitutional Limitations, pages 365, 369; Angell on Limitations, sections 64–67; Story on Conflict of Laws, section 582.

When it was settled in *Shelby* v. *Guy*, 11 Wheat. 361, and afterwards universally held (as in this state, 6 Geo. 633), that title was vested by operation of the statute, which must be recognized everywhere, it would seem that the rule, for the same reason, should have been extended to claims for money. *Brown* v. *Parker*, 28 Wis. 21; *Carpenter* v. *The State*, 41 Wis. 36.

When it became settled doctrine everywhere that the bar complete is a vested defense, a right inalienable by legislatures or constitutional conventions (*Davis* v. *Minor*, 1 How. [Miss.] 183; *Gardner* v. *Stephens*, 1 Heisk. 280; 54 N. H. 167; Cooley's Const. Lim. 365), it would seem that there could no longer be a doubt that the defense would be recognized everywhere.

When the statute was first enacted, and for many of the earlier years of its existence, it was vigorously assailed as an unwarrantable interference with the obligations of contracts. Instead of resting it then, as it has since been rested, upon public policy and the necessities of the case, it was sought to justify it as a regulation of the remedy, merely — a law of evidence raising presumptions of payment, release, conveyance, etc. — and so within legislative control. *Sturgis* v. *Crowninshield*, 4 Wheat. 122.

Thus the " groove " or " rut " of " remedy " was made, in which the courts have moved. A vigorous effort — main strength, simply — not justified by any principle peculiarly applicable, prized them out when claims to property were concerned, but as to claims for the recovery of money, they have gone on content with explaining that they do so only because the rut or groove is there. I challenge the production of any philosophical reason for calling the statute of limitations a regulation of the remedy. It is enacted, of course, by each state for

itself, and to be operative in its own courts, because its juris-diction is thus pent up.   The old doctrine of prescription — the creation of the courts, and not of the Legislature — was a doc-trine of presumptions.  As directly opposed to it in character, the legislative enactment is a regulation of rights.  " No action shall be commenced," it declares.   It is a forfeiture of the right to sue, imposed upon laches — an arbitrary curtail-ment, down to a specified standard, of the enforceability of the right.   It is a resolution of the law that the person has by his own act, and of his own choice, abandoned, waived, extin-guished his right.  4 Kern. 16.   If presumption at all, it is the presumption of law that the right does not exist, because the plaintiff has not sought to enforce it, and not the presump-tion of facts by reason of which the defendant is protected. Scattered through the decisions may be found incidental, often unconscious, recognitions of views like these in regard to the real nature of the statute.  The Wisconsin court, in the case cited (18 Wis. 21), has made an earnest and intel-ligent protest against the illogical confusion.   Upon this theory of the statute, the manifold difficulties in which the courts have been entangled, as to the character of the ac-knowledgment or promise required to take a case out of the statute, and as to whether the suit must be upon the old cause of action or the new promise, would be easily solved.   The replication to the plea of the statute would be a waiver by the defendant.   4 Kern. 16.

It is curious that, upon the current theory, it should have ever been held that the action could be maintained when the bar had become complete and a new promise was relied upon, except upon the new promise.   To the plea " *non assumpsit infra sex annos,*" it is no reply that within six years the defendant has promised.  The cause of action is the old claim, more than six years old.   The statute says no action shall be commenced except within six years from the time when the action accrued.   It makes no exception for the case in which a new promise has supervened.   That exception has

been made by the courts. It cannot be said that the original cause of action accrued within six years, because within six years it has been revived. The replication admits the truth of the plea. Hence the discordant decisions upon this point. Consequent upon it came the discordant views as to what *is* an acknowledgment or promise. In some states the Legislature, by the Tenterden Act or other device, seeks to mend the bungling. How far simpler, and how far more in harmony with the symmetry of pleading, if the replication should be: You have *waived* that plea by your promise or acknowledgment. *Van Dorn* v. *Bodley*, 38 Ind. 405 ; Ang. on Lim., sec. 288. Upon the theory suggested, the statute of *loci contractus* would be available everywhere, if by the lapse of time, while the parties remained within the jurisdiction, the defense had become consummate — vested ; and otherwise, would not avail.

In various directions — groping blindly after a better way, or impelled by the logic of principle — the courts have advanced, until they now present the appearance of a straggling host scattered through a vast territory. Inconsistency, contradiction, complication, and confusion are found in the books of every state. On one page, where claim to property is involved, the statute is said to operate upon the right; and on the next page, when money is sought to be recovered, the very same words of the same statute are held only to affect the remedy.

But there is one stage of advance which all the courts have reached, as conceded by Mr. Walter, viz. : Wherever, by the *lex loci contractus*, the effect of the statute is to " extinguish " the claim, the *lex fori* will give to it the same operation. We claim that such is the effect in Tennessee. Our plea is a plea of a vested right thus acquired in Tennessee. The court will look to the decisions in Tennessee to ascertain this. *McMurtry* v. *Morrison*, 62 Mo. 140 ; *Carson* v. *Hunter*, 46 Mo. 467 ; *Cape Girardeau County* v. *Harkison*, 58 Mo. 90 ; 36 Mo. 338 ; 12 Ves. 86 ; *Leneala* v. *Battelle*, 6 Wend. 475. There is an apparent want of uniformity in the Tennessee decisions upon this

subject, but I submit that wherever this has been the very point of the case there is unanimity. I claim, of course, that the decision that the bar complete is a "vested right" is a decision direct; and that in making this decision the Tennessee court is sustained by this court, and by all the courts of the country. I cite: *Belote's Exrs.* v. *Wynne*, 7 Yerg. 540; *Girdner* v. *Stephens*, 1 Heisk. 286; *Harrison* v. *Henderson*, 7 Heisk. 315; *Muse* v. *Donelson*, 2 Humph. 166; *Brodie* v. *Johnson*, 1 Sneed, 467; *Yancey* v. *Yancey*, 5 Heisk. 353; *Taylor* v. *Nixon*, 4 Sneed, 352. This last case makes the bar of the statute analogous to a discharge in bankruptcy.

*Henry Craft* and *Jas. H. Watson*, of counsel for the plaintiff in error, argued the case orally.

*Walter & Walter*, for the defendant in error.

1. Defendant interposed the pleas of "*non assumpsit*," "payment," and "statute of limitations."

On the trial, plaintiff introduced a large mass of testimony to establish her claim, and defendant introduced all his testimony. After all the testimony was introduced, defendant withdrew his plea of "*non assumpsit*," and insisted upon his right to open and close the case.

The court refused this, and properly. It was purely a matter of discretion with the court below, and to have decided differently would have been an act of gross injustice to plaintiff.

The rule is about this: that while the power to review the question of the right to open and close is not absolutely denied, yet there must be a clear case of prejudice to reverse on that ground. *Preston* v. *Walker*, 26 Iowa, 205; *Belt* v. *Ragust*, 27 Texas, 471.

In *Fry* v. *Bennett*, 28 N. Y. 324, it was held that the right to open or close is one of practice, to be regulated by the discretion of the judge, and his decision upon it is not a subject of exception. See, to same effect, *Richards* v. *Marine Ins. Co.*, 31 Mo. 518.

In *Merriam* v. *Cunningham*, 11 Cushm. 40, it was held that

the defendant cannot obtain the right to open and close, unless the admission of the plaintiff's case is made before the trial.

The justice of this rule and the injustice of the reverse is fully illustrated by the case at bar. The plea of *non assumpsit* forced plaintiff to introduce a large mass of testimony. To establish the claim, plaintiff's counsel thought it necessary to show that Mrs. Dawson had been informed that plaintiff claimed that she had loaned her $5,000, and when so informed, she did not deny it. This proof was made, but in connection with it came Mrs. Dawson's declaration that if she chose to make out an account against Miss Guy, she (Mrs. Dawson) would owe her nothing. To further prove her claim, plaintiff proved by Nuttall that Mrs. Dawson, in 1868, desired him to pay what he owed her, as she owed plaintiff money, which she wished to pay. These admissions, rendered necessary by the plea of *non assumpsit*, carried with them Mrs. Dawson's declaration that she had paid the debt; and this is the only proof in the whole record of any payment by Mrs. Dawson, save the sale of the fourteen bales of cotton by Dickerson, which was allowed by the jury. None of these declarations would have been adduced, and could not have been introduced by the defendant in his plea of payment. Defendant, nevertheless, kept in the general issue to force plaintiff to introduce these declarations, and then withdrew that issue, not only to get the advantage of them under his plea of payment, but also the opening and the close. This shows the justice of the rule as stated in 11 Cushman, page 40.

2. The statements of Mrs. Dawson to the witness Walter were not confidential communications.

Miss Guy called on him, one day, to prosecute before a military court a claim for some cotton said to have been assigned to her by Mrs. Dawson. Neither the claim nor assignment was in writing. He advised her that Mrs. Dawson had better come to town and furnish him with some evidence of the claim and its assignment. She accordingly came the

next day, with Miss Guy, and in her presence stated that she owed Miss G. $5,000 borrowed money, and had transferred fourteen bales of cotton, which had been seized by military officers, in part payment of this debt. Witness stated that Mrs. Dawson was not his client when she made this statement; that afterwards she joined Miss Guy in the petition to aid her in recovering the cotton; and that, when the claim was after-wards severely contested, she, possessing very superior business qualifications, took the management of the matter, and, after it was terminated, paid him his fee. How Mrs. Dawson could possibly have been the client of Walter & Scruggs when she made the statement about the borrowed money, we cannot see. The statement of the witness is directly to the contrary. The communication was made by Mrs. Dawson, not his client, in the presence of Miss Guy, who was his client. But even if Mrs. Dawson had been his client, and Miss Guy not, and the former had authorized him to make the statement to the latter (much more where she had made it herself), this would not have been a confidential communication. This was so expressly ruled in *Risson* v. *Davies*, 2 Nev. & M. 210, *Shore* v. *Bedford*, 5 Man. & G. 271, and *Griffith* v. *Davies*, 5 Barn. & Adol. 502. If ever employed as her attorney by Mrs. Dawson, this communication was certainly made before such employment; and the rule is that statements made to an attorney before he is employed as such are not privileged. 1 Greenl. on Ev., sec. 244.

3. Is the plea of the statute of limitations of the state of Tennessee good?

It is bad in form, and the special demurrer to it was properly sustained.

A demurrer admits facts which are well pleaded, but does not admit conclusions of law. 1 Chitty's Pl. 662, and notes.

Statutes of a foreign state should be fully and specially pleaded, that the court may adjudge them. Chitty's Pl. 216; *Walder* v. *Maxwell*, 1 Mass. 103; *Pearsall* v. *Dwight*, 2 Mass. 34.

The Supreme Court of the United States, in *Bank of United States* v. *Donnally*, 8 Pet. 373, says if a party desire the benefit of a foreign law, he must state that law, and it must not be left to mere inference.

The plea avers " that the statute of limitations of the state of Tennessee is six years." This is all. Its phraseology — nay, even its substance and provisions — are not stated. How is this court to know whether it bars the remedy, or extinguishes the right? Even the courts of Tennessee hold that statutes of this nature are positive or negative (shown hereafter in this brief) ; the former extinguishing the claim, and the latter barring the remedy. There is a wide and essential difference between this class of statutes. How is the court to know to which class the Tennessee statutes belong? They should be set out, or their substance at least, to enable this court to judge.

But defendant below attempted to relieve the court on this point. He goes on to allege, further, that both plaintiff and defendant lived " in Tennessee for six years, and then says the effect and operation of said statute of limitations of six years of the state of Tennessee were to bar any recovery upon said alleged cause of action, and wholly to extinguish and destroy the same, if it ever existed." Here is nothing but a legal conclusion drawn from the statutes by defendant. This court is to judge of that, not defendant. The only real defense, as alleged, was that Miss Guy's claim was extinguished, and this must be worked out by this court, not on the statute, but on a conclusion of law on a statute not set out by defendant, and which cannot, therefore, be judged of by the court. But the plea is grossly uncertain. Which effect follows from the Tennessee statute — the bar of the remedy, or extinguishment of the right? They are rarely, if ever, embraced in the same statute, and yet defendant, in his effort to relieve the court from judging, says both were.

But suppose the statute of Tennessee had been properly set out and pleaded in this plea ; would it be a defense in this court?

Tennessee has a statute of frauds (Code Tenn. 1858, sec. 1761), which, like our own, vests title to personalty held adversely for a particular period. Her courts (*The State* v. *Crutcher*, 2 Swan, 512, 513 ; *Marshall* v. *Hudson*, 9 Yerg. 57), and ours alike, hold that this statute absolutely extinguishes the right, and is different from the ordinary statute of limitations. *Mosely* v. *Williams*, 5 How. 520 ; *Fears* v. *Sykes*, 35 Miss. 633. Story notices and approves this distinction. Story on Confl., sec. 582.

But what as to the ordinary statute of limitations? The Code of Tennessee, 1858, section 2769, says that "all actions shall be commenced," etc. Is not this the ordinary statute of limitations? Her courts have so held, defendant's plea to the contrary notwithstanding. They have said that statutes of limitations are of two kinds — one establishing a positive prescription, and the other a negative prescription. The first extinguishes the right, and the other bars the remedy, and the ordinary suits for debt are of this latter kind. *Marshall* v. *Hudson*, 9 Yerg. 57. The court says : "It seems to us, on principle and authority, that perhaps in every instance where the law creates a bar or suspends an obligation, it acts upon the remedy."

Our statute (Code, sec. 1151) employs the same language as that of Tennessee, viz. : the action "shall be commenced," etc. Has any court in this state ever even dreamed that this statute extinguishes the right? Similar language in other statutes has been held only to bar the remedy. Indeed, this is the universal rule. Such language as the above, and the language that "no action shall be brought," "no suit instituted," and the like, are all held to affect the remedy. See cases before cited from Tennessee. See, also, *Carson* v. *Hunter*, 46 Mo. 467 ; *Corter* v. *Page*, 8 Vt. 146 ; *Pane* v. *Drew*, 44 N. H. 306 ; *Jones* v. *Jones*, 18 Ala. 248. Story says (Story on Confl., 576) there is no doubt that statutes of limitations strictly affect the remedy, and not the right. It is certain, then, and that be-

yond all cavil, that the statute of Tennessee does affect the remedy, and does not affect or extinguish the right.

Can, therefore, that statute be pleaded to a suit in this state? Can it be noticed in the *lex fori*, when that is different from the *lex contractus?* We again let the courts of Tennessee answer this question. In *Estes* v. *Kyle*, Meigs, 34, a judgment from Virginia was sued on. The defendant pleaded the statute of limitations of ten years of that state; that he lived all these ten years in Virginia, and that the plaintiff was a resident of that state when the judgment was recovered. It seems, by the laws of Virginia, if he had been out of the state, he would have fallen within the exception of the statute, and the case is, therefore, exactly like the one at bar. Be this as it may, the court of Tennessee held that the Virginia statute could not be pleaded to the suit. We specially call the attention of the court to this case. Again, the Supreme Court of Tennessee held the same doctrine in *Marshall* v. *Hudson*, 9 Yerg. 57, and put the very case now before this court hypothetically, and held that such a plea as the one under discussion in that case would be bad. How about Mississippi? Very nearly the case at bar was presented in *Hamilton* v. *Cooper*, Walk. 542, and the court held the plea bad, whilst it, for the first time, noticed and supported the distinction between statutes that barred the remedy and those which extinguish the right. Wharton (Whart. on Confl., sec. 536) states unqualifiedly that this plea is bad.

This very plea was pleaded in *Power* v. *Hatway*, 43 Barb. 214, and was held bad by an unanimous court. The question is fully discussed, and many authorities cited. So, also, in *Bulger* v. *Roche*, 11 Pick. 36, in *Crocker* v. *Arey*, 3 R. I. 178, in *Gray* v. *Gray*, 2 Bibb, 205, and in *Thebadeaux* v. *Lavassire*, 36 Me. 362. Kent, without any qualification, states this as the rule. 2 Kent's Com. 462, 463. See the following cases, viz.: *Dunning* v. *Chamberlain*, 6 Vt. 127; *Medbury* v. *Hopkins*, 3 Conn. 248; *Jones* v. *Jones*, 18 Ala. 248.

Story says: "It has become a formulary in international jurisprudence that all suits must be brought within the period prescribed by the local law of the country where the suit is brought, and this rule is as fully recognized in foreign jurisprudence as it is by the common law." Story on Confl., sec. 577.

Under the force of these decisions he was compelled, against his impression of what he thought ought to be the rule, to decide that where the law of the place of contract and of the domicile of the debtor was a complete defense to the debtor at home, it formed no defense for him in another state, where he may be accidentally caught and sued. *Le Roy* v. *Crowninshield*, 2 Mason, 151.

This point has been ruled, not only in the cases of *Estes* v. *Kyle*, Meigs, 34, *Marshall* v. *Hudson*, 9 Yerg. 57, *The State* v. *Crutcher*, 2 Swan, 512, *Hamilton* v. *Cooper*, Walk. 542, *Bucks* et al. v. *Taylor*, 49 Miss., *Fears* v. *Sykes*, 35 Miss. 633, *Power* v. *Hatway*, 43 Barb. 214, *Bulger* v. *Roche*, 11 Pick. 36, *Crocker* v. *Arey*, 3 R. I. 78, *Graves* v. *Graves*, 2 Bibb, 207, *Thebadeaux* v. *Lavessier*, 36 Mo. 362, *Medbury* v. *Hopkins*, 3 Conn. 472, *Dunning* v. *Chamberlain*, 6 Vt. 127, *Jones* v. *Jones*, 18 Ala. 248, but also in *Todman* v. *Purdy*, 5 Nev. 238, *Paine* v. *Drew*, 44 N. H. 306, *Urton* v. *Hunter*, 2 W. Va. 83, *Bank of United States* v. *Donnally*, 8 Pet. 361, *Carson* v. *Hunter*, 46 Mo., *Levy* v. *Boss*, 2 Bailey, 217, *Jones* v. *Hook*, 2 Rand., 8 Vt. 146, *Lacoste* v. *Benton*, 3 La. An. 220, and many other cases we might cite.

This is the rule, also, in *England British Linen Company* v. *Drummon*, 10 Barn. & Cress. 903. In fact, this case is almost identical with the one at bar.

We know of but two cases that have been decided differently in the United States on the common law. One is in 8 Porter, and is expressly overruled by name in 18 Ala., 248. The other is an early case in New Jersey, by a divided court, and which was attacked in 1 Zab. 714, and was admitted by all to

be without precedent, but was permitted to stand under the rule *stare decisis.*

Decisions have been made in favor of plaintiff in error in *Gillett* v. *Hill*, 32 Iowa, 220, *Doin* v. *Bodly*, 38 Ind. 402, *Hays* v. *Cage*, 2 Texas, 501, *Shipley* v. *Shipley*, 7 Ohio, 246 ; but they were under express statutes on the subject. In each of the above cases both parties lived in other states until the bar attached, and yet the courts say expressly that, independent of the statute, they would have been compelled to decide against the debtor. (The dissenting opinion in Indiana contains this statement — a statement not controverted by the majority of the court.)

Any different rule would produce confusion. Story on Conflict of Laws, section 578, gives this very reason why the *lex fori* should govern. He says, substantially, that different rules would otherwise obtain between litigants in the same courts, and the difficulty of the courts knowing the foreign rule would produce the greatest confusion. In *Lacoste* v. *Benton*, 3 La. An. 220, the court, on this subject, says that our courts would be exposed to frequent perplexity, and probable error, if required to expound and apply the rules of a foreign jurisprudence or legislation."

The third assignment of errors is concerning the language employed by counsel for Miss Guy, in the closing argument. The bill of exceptions contains all on this subject. Counsel believed then, as he believes now, that he had the right to refer to that account. It was filed with the declaration, as expressly required by sections 580 and 581 of the Code. It was part of the record of the case, and made so by requirement of law.

But if wrong upon this point, when defendant below objected, the court below said, in the presence of the jury, " that there was no evidence before the jury of plaintiff's swearing to her account against Mrs. Dawson, and counsel had no right to talk about it in argument." The court certainly sustained the objection.

The court even went further, and, when counsel suggested the probability that the account was probated, refused to let· him say anything about it, and actually took it from the record, and from the jury when it retired to consider of its· verdict. Certainly, defendant's objection was fully sustained.

We concede that the true rule on this subject is laid down. in *Dickman* v. *Burke*, 25 Ga. 226. It was there held that where improper remarks or comments had been made by coun-· sel, and the court was requested, but refused, to exclude them, this was error. But in the case at bar the court did every- thing, as it supposed, which defendant's counsel required. It might well reach such conclusion, when defendant asked nothing further, and did not except to that which was done.

But the assignment of error is an error itself. The court· did exclude the statement of counsel, and could not err in " not excluding it."

*H. W. Walter*, of counsel for the defendant in error, argued. the case orally.

SIMRALL, C. J., delivered the opinion of the court.

The question most elaborately discussed by counsel is· whether the statute of limitations of the " *loci contractus* " can be pleaded in bar in a foreign jurisdiction, where both parties· were resident in the *loci contractus* during the whole statu-· tory time, so as to have made the bar complete there.

The averments in the plea are to the effect that both Mrs. Dawson, the defendant's intestate, and Miss Guy were· residents of the state of Tennessee for eight years after the· cause of action accrued, and that six years was the time allowed by the law of that state for bringing this suit.

It might be supposed that the active commercial inter-· course between the inhabitants of different countries for the last century, and especially between the people of these     . American states, would have given rise to almost every con-· ceivable question growing out of personal contracts made in one country, and the enforcement of them in another; and.

that much which might have been at one time controverted had been put at rest.

Certainly the principle has been established, beyond the reach of controversy, that the validity and interpretation of personal contracts are to be tested by the "*lex loci contractus,*" and not by the *lex fori,* if that be in a foreign jurisdiction. The only exception to the rule is that no country will enforce a contract, made abroad, which is injurious to its own rights or policy, or hurtful to its citizens, or which is offensive to public morals. *Le Roy* v. *Crowninshield,* 2 Mason, 157 ; *Bulger* v. *Roche,* 11 Pick. 36.

Another principle, to which there is no exception, is that remedies on contracts must be pursued according to the law of the forum where the action is brought, and not by the law of the country where the contract was made. This principle is of such universal acceptation, and is so convenient and necessary to national and inter-state commerce, that it may properly be said to have found a place in the public law.

If statutes of limitations belong to the remedy, and have no relation to the validity and obligation of contracts, then the statute of the forum, and not of the place of the contract, would prevail, unless the law of the forum had otherwise declared.

The Federal Constitution inhibits the states from passing any law impairing the obligation of contracts. If the statute of limitations in force at the time a contract is made is in any proper sense a part of its *obligation,* then the state cannot shorten the time, for that (on this theory) would be an interference with the right of the creditor, springing out of the contract. But nothing is better settled in American jurisprudence than that the states may, at their discretion, alter and change statutes of limitations. Their right so to do rests on the ground that such legislation does not trench upon, or impair, the *right* of the creditor, or the obligation of the debtor, but is remedial.

The rule at common law, well established in the courts long

before the Revolution, was that the time of the limitation of actions on contracts depends on the law of the forum, and not on the law of the state or country where the contract was made. In 1705 the lord keeper applied the English statute to a judgment which had been recovered in France. *Duplex* v. *De Rosen,* 2 Vern. 540.

In an early case at law, *Williams* v. *Jones,* 13 East, 439, Lord Ellenborough made the distinction, which has ever since been followed in England.

According to the law received in the foreign court, there was only an extinction of the *remedy,* "but there is no law or authority that where there is an extinction of the remedy only in the foreign court, that shall operate, by comity, as an extinction of the remedy here also." "If it go to the extinction of the right itself, the case may be different."

In one of the earliest cases in New York, the defendant pleaded in bar the statute of New York, which was six years; the plaintiff replied that the contract was made in Connecticut, where the statute was seventeen years. The court applied the New York statute.

In the case of *Le Roy* v. *Crowninshield,* already cited, Judge Story stated, as the inclination of his mind, that where the remedy was completely barred by the "*lex loci contractus,*" there was a virtual extinction of the right, which ought to be recognized in every other tribunal." But many years afterwards, perhaps after fuller investigation, and more mature consideration, the same eminent jurist, in the Conflict of Laws, said : "That, as the law of prescription of a particular country, even where the contract is made in such country, forms no part of the contract itself, but merely acts upon it *ex post facto,* in case of a suit, it cannot properly be deemed a right stipulated for, or included in, the contract." Mr. Angell, in his work on Limitations, page 63, section 66, says : "The doctrine of the common law, beyond all doubt, is firmly fixed, that the limitation prescribed by the *lex fori,* in respect of remedies, must prevail in all cases of personal actions. In an

elaborate note appended to the report of *Andrews* v. *Herriott*, 4 Cow. 510, is a copious collection of the authorities on the subject.

The case of *Townsend* v. *Jamison*, 9 How. 407, presented the precise question whether, a cause of action having accrued in Mississippi, and been completely barred there, the bar of the Mississippi statute might not be pleaded in a court of Louisiana; and the decision was that it could not. That is the settled rule in the Federal judiciary. *McMoyle* v. *Cohen*, 13 Pet. 312; *McCluny* v. *Silliman*, 3 Pet. 276; *Hawkins* v. *Barney*, 5 Pet. 457; *Bank of United States* v. *Donnally*, 8 Pet. 361. In the course of the judgment in *Townsend* v. *Jamison*, *supra*, the learned judge said: "It has become a fixed rule of the *jus gentium privatum*, unalterable, in our opinion, either in the states of the United States, or England, except by legislative enactment." In that emphatic declaration we concur.

Whether it would not be wise to alter the rule where both parties were resident in another state, whose statute had barred the remedy, is a subject worthy, perhaps, of the serious consideration of the Legislature.

We have been referred by counsel to several cases which are claimed to have made a new departure on this subject, adopting the suggestion made by Judge Story in the case already referred to, reported in 2 Mason.

Of this class is *Brown* v. *Parker*, 28 Wis. 30, 31, which refers to the antecedent cases, and states that the construction which had been put on the statute of that state, was: "That after the time had expired, the contract or obligation had ceased to exist, and was no longer of any significance or force."

The statute of Maryland was: "That after twelve years, * * * no bill, bond, judgment, etc., shall be *good*, or pleadable, or admitted in evidence."

The effect of such statutes in causes of action sued on in another state was presented in *Baker* v. *Stonebaker*, 36 Mo. 338, 349, and it was held that after the twelve years had ex-

pired in Maryland, after the rendition of the judgment, no recovery could be had upon it in Missouri, because the Maryland statute did not merely affect the remedy, but it absolutely extinguished the debt. It operated on the right. Statutes of similar import have been enacted in several of the states.

Where the right has been extinguished, by the lapse of time, in another state where the parties were resident, we would undoubtedly give effect to the statute declaring that consequence, in any suit brought in our jurisdiction grounded on the contract.

We pass, now, to consider whether the statute of Tennessee affects the right, or relates merely to the remedy.

The cases referred to in 1 Heisk. 280, 5 Heisk. 353, 6 Heisk. 320, and 7 Heisk. 315, declare the same rule laid down in 1 How. (Miss.), that where the bar of the statute has become complete, it is *ultra vires* either of a constitutional convention or of the Legislature to take away a right to make that defense, already vested. Very recently the Supreme Court of Tennessee, in *Woodlie* v. *Towles and Wife*, reported in Memphis Law Journal of January, 1878, maturely considered the effect of the statute of that state, reviewing the antecedent cases. On the one side the proposition was pressed on the court that the expiration of the statutory time extinguished the debt, and that a subsequent promise was a new cause of action, which must be counted on in the declaration. On the other side it was contended that the new promise was but a waiver of the statute, and that the action should be brought on the original contract.

The reasoning of the court, grounded on the adjudications in that state, was that the statute did not touch the right, but operated on the remedy. The conclusion is thus stated : " The effect [of the new promise] is to restore the remedy upon the original debt, and that this original debt is the foundation of the action, and the basis of the judgment.

We are of opinion, therefore, that the statute of Tennessee, set up in the plea, operated alone on the remedy, and did not

have the effect claimed for it in the plea, of extinguishing the right. But it is said that, inasmuch as the plea averred that was the effect of the statute, the plaintiff by his demurrer admitted its truth.

A demurrer admits all matters of fact that are well pleaded, but it does not admit conclusions of law stated by the pleader. These are his own deductions or interpretations of the law, and may be erroneous. It is the business of the court to declare the law, which necessarily implies the duty of construing and interpreting statutes. By special statute of this state, the courts must judicially know the law of the other states, and need not be informed by averment or proof.

An attorney at law is not permitted to disclose opinions, statements, or communications made to him by his client touching matters the subject of professional advice and consultations. It is the privilege of the client that the seal of confidence and secrecy should not be broken without his consent. Nor does the privilege terminate with the particular business which established the relation. Whether the attorney accepts the employment or not, disclosures made to him expository of the business about which his services are sought are as much protected if the attorney declines the engagement as if he accepted. *Crider* v. *Garland*, 11 Smed. & M. 138. Justice, and the protection of private rights, demand the strictest confidence and privacy in the relation.

But does the testimony delivered by Colonel Walter on the trial come within the rule? These were the attending circumstances: Miss Guy applied to the witness to take proper proceedings to present and prosecute before a military court a claim to some cotton bales, said to have been assigned to her by Mrs. Dawson. At Colonel Walter's suggestion, Mrs. Dawson and Miss Guy called at his office the next day, for the purpose of making such explanations about the cotton as would enable him to prepare the claim in proper shape. In this interview Mrs. Dawson stated (in the presence of Miss Guy) to Colonel Walter that she owed Miss Guy $5,000, money

borrowed, and had transferred to her fourteen bales of cotton, which had been seized by military officers. Mrs. Dawson joined with Miss Guy in her petition, and, because of her superior business qualifications, took the management of the contestation, and paid him his fee at its termination. Witness stated that when Mrs. Dawson made the statement about the borrowed money, she was not his client.

One of the issues submitted to the jury at the opening of the trial, and, indeed, throughout the investigation of the case on its facts, was whether Mrs. Dawson owed this debt of $5,000 — whether really she had ever borrowed the money from Miss Guy. There was also issue on the plea of payment, and the replication to the statute of limitations. After the testimony had been adduced on both sides, and the case closed as to that, the defendant withdrew the plea of *non assumpsit*, leaving only the issue on the plea of payment, and the replication to the statute of limitations, to be responded to by the jury.

Counsel on either side did not address to us any argument on the question of the effect of withdrawing the general issue on the rulings of the court, either in the admission or the rejection of testimony applicable to that issue. If the only defenses pleaded in the first instance had been payment and the statute of limitations, it would have been impertinent and irrelevant to have offered testimony to prove the indebtedness. Such pleas contain the implied admission that the intestate once owed the debt, and that her personal representative would have a right to recover in this action, unless it has been paid, or barred by the statute of limitations. Such matters being affirmative, and posterior in time to the creation of the indebtedness, the burden of proof is on the defendant. Strictly, they "confess" that the cause of action, as laid in the declaration, once existed, but they "obviate" it by "new" substantive "matter."

Such pleas "confess" on the record the existence of the debt, and, unless payment is proved, or the statute has barred

the suit, the plaintiff shall have the verdict, by reason of the "implied confession."

When the defendant withdrew the plea of *non assumpsit,* there necessarily fell with it all the testimony that had been admitted under it. The plaintiff got no advantage from any evidence tending to prove the promise, and the defendant deliberately abandoned all benefit he might have insisted upon before the jury from evidence conducing to prove the original non-existence of the indebtedness. However weak may have been the plaintiff's case, the withdrawal of the plea was a conclusive "confession" that the case stated in the declaration was true, unless obviated by the affirmative pleas. The withdrawal of *all* the pleas, after the testimony has been put before the jury, would be an abandonment of all the defenses, and the jury should be discharged, and judgment be rendered by *nil debet.* If one plea is withdrawn in such circumstances, it is a conclusive admission that further opposition to a recovery will not be made by reason of anything that had been proved, or that might be, under that plea.

That much of the case has been blotted out, and the defendant has elected to stand upon his other pleas; and to the issues raised on them, alone, can the jury respond in its finding. If such be the consequences, the defendant is precluded from complaining that the Circuit Court admitted improper testimony under the plea thus withdrawn.

If he proposed to controvert these rulings, he should not have surrendered that part of the case which called them forth. His "confession," implied by the withdrawal of the plea of *non assumpsit,* cured all the defects in the plaintiff's testimony offered in proof of his cause of action, and waived any right he might have had to review the rulings of the Circuit Court on questions pertinent to that issue, and to it alone.

Whether, therefore, the witness Colonel Walter was competent to testify, or not, to prove the admission of Mrs. Dawson that she borrowed the $5,000, the withdrawal of the plea dis-

pensed with all proof on that point, and waived all right to predicate error in the admission of testimony under that issue.

But if this view did not conclusively dispose of the question, it would be difficult to place the admissions made by Mrs. Dawson on the ground of confidential communications. The statement was made in the presence of Miss Guy. It is much like the cases of *Ripon* v. *Davis*, 28 Eng. Law Rep. 358, and *Griffith* v. *Davis*, 27 Eng. Law Rep. 114 (5 Barn. & Adol. 504).

The general rule is that the party holding the affirmative of the issues, and upon whom is the burden of proof, has the right to open and conclude the argument to the jury.

But, whilst that much is universally conceded, must the judgment be reversed if the right has been denied? In Missouri, whilst stating the rule as above, the Supreme Court, in several cases, say that it is a matter of practice, resting in the discretion of the court; and on that ground the judgment will not be reversed, " unless it is manifest such ruling has produced a wrong to the party." *Birchard* v. *Insurance Co.*, 31 Mo. 520; *Wade* v. *Scott*, 7 Mo. 509.

In *Fry* v. *Bennett*, 28 N. Y. 330, it is said to be in discretion, and a denial of the right will not be ground of reversal, unless " it has worked manifest injustice." Such is the ruling in Texas. *Belt* v. *Raguet*, 27 Texas, 481. In Iowa a statute was to this effect: " The party having the burden of the issue shall have the opening and closing." " And a new trial shall be granted for irregularities in the proceedings of the court, or for any * * * abuse of discretion, by which the party was prevented from having a fair trial." In *Preston* v. *Walker*, 26 Iowa, 208, it was said that " whilst the right to review such a question is not denied, yet there must be a clear case of prejudice in order to justify a reversal on that ground."

We accept these authorities as declaratory of the proper

practice.    The party holding the affirmative of the issues must offer the testimony to maintain them, and has the privilege to open and close the case to the jury.    Whether the privilege shall be denied, depends on exceptional circumstances.

In this case a large mass of testimony was introduced by the plaintiff, to support her cause of action, controverted by the general issue.    Part of it was the admissions of Mrs. Dawson of the borrowing of the money, coupled with the further statement that, if she were to make out an account, she would owe Miss Guy nothing; other parts of it tended somewhat to help the defendant on the issue of payment.

The plea, manifestly, was withdrawn for the purpose of getting the supposed advantages of opening and closing the argument.    Looking to the posture of the case as made when the plea was withdrawn, we cannot condemn the action of the court as an abuse of discretion.

It is lastly assigned for error that the court did not exclude from the jury one or more remarks made by the counsel for the plaintiff in his closing argument, to which the attention of the presiding judge was called.

The language was to this effect: " That Miss Guy [the plaintiff], a pure, high-minded, accomplished, and elegant lady, had sworn to the account sued on, * * . * and that she would not have done so if every dollar claimed had not been due ; and they would find her guilty of perjury if they found for the defendant."

" Counsel then stated to the jury that the presumptions were that Miss Guy had probated the account ; but the court stopped counsel, and refused to let him say anything to the jury about the probated account, and the account was not taken out by the jury when it retired to consider of its verdict."

The complaint is that the court did not exclude the statement from the jury.

A jury trial must be conducted according to the law of the land, and should be guarded by the court from all improper

influences, so that the finding of the jury may be true responses to the issues, according to the law and evidence. Litigants have a constitutional right to appear and be represented by counsel, and the fullest liberty and range of argument should be allowed; but within no allowable latitude is it permissible to state facts — and comment on them in argument — which are not before the jury in testimony. Such conduct is not protected by the privilege of counsel and the fullest liberty of speech.

Within the limits of the testimony, the right of argumentation, illustration, and comment is free. But that freedom does not extend to the assumption of facts not in evidence, as the basis of argument, to the prejudice of the adverse party. It is the duty of the presiding judge, to whom is intrusted the supervision of the trial, *suo sponte*, to interpose, especially so if attention is called to the impropriety. *Mitchum's Case*, 11 Ga. 633; *Berry's Case*, 10 Ga. 511.

In *Dickerson* v. *Burke*, 25 Ga. 227, it is declared to be the duty of the court to arrest an argument not based on the evidence.

The bill of exceptions states that, when the attention of his honor, the circuit judge, was directed to the remarks of counsel, the "court said to counsel, in the presence of the jury, that there was no evidence before the jury of plaintiff's swearing to the account against Mrs. Dawson, and counsel had no right to talk about it in argument."

We construe this language as at once arresting counsel in the line of his speech, and distinctly informing the jury that the facts assumed as a basis of argument were not in evidence.

Doubtless the *nisi-prius* judge did all that seemed necessary to rectify the evil consequences, and it is difficult to see what more could have been done. He stopped counsel, and pointed out to the jury, or in their hearing, the irregularity complained of, and that there was nothing in proof as a predicate for the argument. We have no doubt counsel supposed he

·could refer to, and comment on; the probated account on file. For this cause we decline to disturb the verdict.

Much of the testimony was circumstantial, in some respects ·conflicting. On the whole case, we decline to set aside the verdict.

: Judgment affirmed.