CARNAGGIO *v.* STATE.*

(Division B. Oct. 11, 1926.)

[109 So. 732. No. 25546.]

1. CRIMINAL LAW. *Intoxicating Liquors. Where affidavit and search warrant described automobile to be searched for liquor as owned and driven by named person in specified city, search of his automobile outside city limits in same justice district was valid, and evidence obtained thereby was admissible.*

   Where an affidavit and search warrant described the property to be searched as an automobile owned and driven by a named person in the city of Lexington, Miss., and search was made of an automobile owned by said person in which he was riding just out of the city limits of Lexington, in the same justice district that the city was in, the search is valid, and the evidence obtained thereby admissible.

2. JURY. *Prejudice against crime charged does not disqualify juror if he can decide case fairly without desire to reach particular conclusion.*

   A juror is not disqualified from, trying a person accused of a crime by the fact that he is prejudiced against such crime, provided always that he is in such a frame of mind that he can, and will, listen to the evidence and decide the case fairly and impartially without having any desire in the particular case to reach a particular conclusion prior to the hearing of the evidence, argument, and instruction of the court.

3. JURY. *Membership in association favoring law enforcement as to particular offenses does not disqualify juror, if he is willing to see innocent acquitted and to give law its proper value, force, and application; one not willing to indulge presumption of innocence and give accused benefit of statutory and constitutional rights, but regards such rights as mere technicalities, is incompetent as juror.*

   The mere fact that a person is a member of an association favoring the enforcement of the law as to particular offenses does not disqualify him as such a juror in such case, but he must at all times be willing to see the innocent acquitted, and to give the law of the land its value, force, and application in a specific case; and, where a person is not willing to indulge the

presumption of innocence indulged by the law, and is not willing to give the accused the benefit of statutory and constitutional rights, but regards such rights as mere technicalities, which ought to be disregarded, he is incompetent to sit as a juror in such case.

4. CRIMINAL LAW. *Stating in argument circumstances not proved in evidence showing champagne to be intoxicating is not reversible error; court judicially knows champagne to be intoxicating.*
While it is improper and erroneous for counsel to state facts in argument not contained in the evidence, still it is not reversible error for him to state circumstances, although not proved in evidence, showing champagne to be intoxicating, as the court judicially knows champagne is intoxicating, although its intoxicating qualities be not especially proved.

*Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 897, n. 93; p. 899, n. 8; Intoxicating Liquors, 33CJ, p. 497, n. 85; p. 677, n. 16; p. 682, n. 4 New; Juries, 35CJ, p. 331, n. 85, 86; p. 332, n. 23, 24; p. 354, n. 21; p. 356, n. 54, 56, 57; Membership in association for the suppression of crime as grounds for challenge of juror, see note in 31 A. L. R. 413; 16 R. C. L. 277; 3 R. C. L. Supp. 556; 5 R. C. L. Supp. 876.

APPEAL from circuit court of Holmes county.
HON. S. F. DAVIS, Judge.

John Carnaggio was convicted of the unlawful possession and control of intoxicating liquors, and he appeals. Reversed and remanded.

*P. P. Lindholm* and *Broom & Gober,* for appellant.

I. The alleged violation of the liquor laws took place on March 8, 1923, whereas the law upon which the opinion in the Moore case was predicated was enacted April 1, 1924. Section 9, article 1, Federal Constitution, provides against the enactment of *ex post facto* laws. *Duncan* v. *Missouri,* 152 U. S. 377; *Kring* v. *Missouri,* 107 U. S. 221; *Jaehne* v. *New York,* 128 U. S. 189.

II. Just here let us call the attention of the court to the fact that there is no proof *aliunde* the alleged con-

fession of the appellant that this liquor seized was in fact intoxicating. No witness for the state pretends to say that it was champagne or absinthe, but merely they say that the appellant said it was intoxicating.

III.   This brings us to a consideration of the question involving the competency of juror Murphy, challenged for cause after all peremptory challenges had been exhausted.

The juror in this case was the author, publisher and prime mover in these articles herein exhibited.   He is perhaps a good man, but overzealous along certain lines. He is deeply prejudiced against liquor law violators.   He regards the constitutional provisions against unreasonable searches and seizures as mere technicalities; he condemns an attorney who would defend a man charged with the violation of the liquor law; he condemns a court that entertains such pleas.   He regards every man as guilty when he is charged with the violation of the liquor law and he must prove himself innocent, if such a thing be possible with jurors of his kind; therefore, he cannot give him the benefit of the doubt and cannot give him the benefit of the presumption of innocence.   Therefore, he is not an impartial juror and is incompetent to sit in this or any other liquor case so long as he entertains the views on the subject that he now has.

It does seem strange that an impartial judge in view of his statements and in view of the fact that the peremptory challenges had been exhausted would have overruled this challenge for cause in the face of the showing here made.   How easy it would have been in aid of simple justice and out of an abundance of precaution to have sustained this challenge for cause and removed this ground of complaint.

The statement of this court in *Gammons* v. *State,* 85 Miss. 103, 37 So. 609, is a summing up of the general rules of competency of jurors.   See, also, *Fugate* v. *State,* 82 Miss. 109, 33 So. 942; *Ferriday* v. *Selzer,* 4 How. 506;

*Childers* v. *Ford,* 10 S. & M. 25.; *McGuire* v. *State,* 37
Miss. 369; *Brown* v. *State,* 57 Miss. 424; *Coleman* v. *State,*
59 Miss. 484; *Sam* v. *State,* 13 S. & M. 189.

*J. A. Lauderdale,* Special Assistant Attorney-General,
for the state.

I.   *The affidavit describes the property to be searched
as "in an automobile in the possession of and driven by
John Carnaggio within the city of Lexington."* The proof
shows clearly that the car searched was in the posses-
sion of the appellant and that it was being driven by
Baughan under his direction that it was searched not
within the city of Lexington, but near said city.   None
of those facts are in controversy.   Counsel for appellant
contend that the testimony procured by said warrant was
inadmissible because this car was not sufficiently de-
scribed and because the search was made outside the city
of Lexington.   Both of these questions have been de-
cided by this court against the contention of the accused.
*Charley Monroe* v. *State,* 107 So. 286.

II.   *The court did not err in refusing to excuse juror
P. H. Murphy who was challenged for cause after all per-
emptory challenges had been exhausted on the ground
that he was prejudiced and incompetent.*   Murphy stated
that he had no bias or prejudice in his mind against the
defendant; that he could go into the jury box and decide
the question of his guilt or innocence solely on the law
given by the court and the evidence produced on the wit-
ness stand; that he had no ill feeling or ill will against
the defendant.   We submit that under the law Murphy
was qualified and competent to act as a juror in this
cause.   16 R. C. L. 263, par. 80 and note; 16 R. C. L. 277,
par. 94; 36 C. J. 330, par. 354; 35 C. J. 329, par. 351;
*Ungerleider* v. *U. S.,* 5 Fed. 614; *Eddy* v. *State* (Ark),
264 S. W. 832.

III.   *Counsel says that there is no proof in the record
that the liquor in question was intoxicating, except the*

*statement of the accused at the time the search was made.*
Both of the officers swore positively that the liquor pro-
cured by them at the time of the search was twenty-three
quarts of champagne and one quart of absinthe; that it
was intoxicating liquor, and at least one of the bottles
was open. Although Attorney Noel did go out of the
record in his argument, we do not see how the defendant
could be prejudiced thereby, as the testimony was over-
whelming that the liquor was intoxicating and there was
absolutely no testimony that it was not. This fact was
not contradicted. However, after the state had proved
that the liquor in question was champagne and absinthe,
it was not necessary to prove that it was intoxicating.
The court would judicially know this to be a fact.

*Broom & Gober* and *P. P. Lindholm,* in reply, for ap-
pellant.

It is agreed that the affidavit and search warrant di-
rected the search of or for "intoxicating liquor consist-
ing of two bottles of champagne wrapped in a sack or be-
ing kept or offered for sale or barter, or sold or bartered
in an automobile in the possession of and driven by
John Carnaggio within the city of Lexington, Missis-
sippi." It is further agreed that an automobile was
searched in which the appellant was riding but not in
Lexington and the car was not driven by Carnaggio.

We know what the Constitution says about "specially
designating" the place. Cornelius, on Search and Seiz-
ure, section 132, p. 145, lays down the rule. The Monroe
case cited is a *per curiam* decision and no opinion was
written, but an examination of the record discloses that
the affidavit authorized the search of "in the *automobiles*
or other vehicles used or occupied by, etc., or on the per-
son of, etc., at West Point, Mississippi in said county or
state." Thus you will observe that it was broad in its
scope and not limited as in the case at bar.

Our court has held in the *Borders* v. *State*, 104 So.' 145, at 147, ''Any description of the place or thing to be searched that will enable the officer making the search with reasonable certainty to locate such place or thing is sufficient,'' citing *Loeb* v. *State*, 133 Miss. 883, 98 So. 449; *Bradley* v. *State*, 134 Miss. 20, 98 So. 458; *Mathews* v. *State*, 134 Miss. 807, 100 So. 18.

Now the point we are making is this: In the Monroe case they could search automobiles used or occupied by him in the county and state, but no search of automobiles not used and occupied by him out of the county or state. In the Borders case they could search automobiles used and occupied by him at or near Pheba in the county and state, but they could not search automobiles not used and occupied by him not at or near Pheba or in the county and state. In the Loeb case, they could search the premises described, but they could not search another house in some other part of town occupied by some one else. It was limited to that description and they did not exceed it. In the Mathews case they could search the premises occupied by him in district No. 5 about fourteen miles northeast of Hazelhurst, but they could not search premises occupied by him or anyone else in Hazlehurst or in some other district or in .some other county and state or some other direction or distance from Hazel-hurst.

In the case at bar we say, for the sake of argument, that they could have searched an automobile in the possesion of or driven by Carnaggio within the streets of Lexington, but they were limited by the averment of the affidavit and if they wanted to search a car in which he was riding not within the city of Lexington, then it was necessary to describe that car, give the name, make, license tag, or some description and say at or near Lexington and in said state and county; anything that would have prevented the possibility of searching some other man's property. Having limited themselves to the city of

Lexington, then that is the limit beyond which they cannot go.

Argued orally by *S. C. Broom,* for appellant, and *J. A. Lauderdale,* Assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

This cause originated in the justice of the peace court.

The appellant was charged with the unlawful possession and control of intoxicating liquors, against the peace and dignity of the state. The evidence against him was obtained by means of a search of an automobile on a warrant issued by the justice of the peace of district No. 1, of Holmes county, Miss. There was a trial before the justice of the peace, and a conviction, from which he appealed to the circuit court, where the case was tried before a jury, and the defendant again convicted.

The search warrant was founded upon an affidavit made by an officer before the justice of the peace of district No. 1, of Holmes county, in which affidavit the officer made oath that he had reason to believe, and did believe, that intoxicating liquors, consisting of two bottles of champagne wrapped in a sack, were being kept or offered for sale, or barter, or sold or bartered, in an automobile; that he procured the search, warrant on such within the city of Lexington, Miss., etc. A writ was issued upon the warrant, and a search was made by the sheriff and the marshal of Lexington about one mile out of the city of Lexington.

The officer testified that he had information leading him to believe that Carnaggio had champagne in his automobile; that he procured the search warrant on such information, and on the day of the search, having this warrant, he made a trip from Lexington to Tchula and return, and on the return trip passed Carnaggio in his automobile, came on into Lexington and got the sheriff, and started out on the highway from Lexington to

Tchula; that when they got out of the corporate limits he gave the search warrant to the sheriff, and they proceeded until they met the appellant in his car; that at the time they made the search the car was being driven by another person, but that Carnaggio was in the car; that they searched the car, and found twenty-three bottles of champagne, and a bottle of absinthe which bottles were labeled "champagne" and "absinthe," and, the appellant stated to them that it was champagne and absinthe, and that the champagne was good and the absinthe better.

A motion was made in the justice of the peace court to suppress the warrant and affidavit and restore to the defendant the champagne and absinthe taken from him, for the reason that the affidavit and search warrant were illegal because of an insufficient description of the automobile, and because the search was made outside of the city limits of Lexington, whereas the affidavit charged that he was in possession of the liquors in the city of Lexington.

The proof taken on the motion to suppress showed that the party, so far as the affiant making the affidavit knew, was not in the city of Lexington at the time the affidavit was made, and that he was not in the city of Lexington at the time the search was made. The same proof was taken on the trial of the case in the circuit court.

The objection to the introduction of the evidence alleged to have been obtained by unlawful search is without merit, as was decided in a very similar case handed down by Division A of this court on February 1, 1926, and reported in *Monroe* v. *State,* 107 So. 289. No opinion was written in that case, but the facts are similar and it is relied on by the attorney-general. In the Monroe case the search warrant recited that the automobile was in the town of West Point, while the search was made at Tibbee Bridge, outside of the corporate limits of the town of West Point, on a road leading toward Columbus,

Miss. The same objection was raised, and this point strongly urged upon the court, but without avail.

When the case came on for trial in the circuit court, a juror was presented and held qualified, over the objection of the defendant, on the ground that he was unfair and disqualified by reason of prejudice and partisanship, and because he had taken a strong position in a newspaper of the county in reference to the trial of cases of this kind, and had criticized the court and jurors for acquitting defendants upon technical grounds; the defendant having exhausted his peremptory challenges. The juror was examined at length, and was very frank in stating his position with reference to this class of cases. He admitted that he signed some resolutions that were published in the county paper, and later, in the same paper, wrote an article that was published in the paper and introduced in evidence, which will be referred to hereafter, and said that the publication embodied his sentiments. He was then asked, among other things, the following questions, to which he made answer thereto as shown:

"Q. Mr. Murphy, I believe you state in this article I have just shown you that you do not think lawyers ought to defend liquor cases. Are those still your sentiments? A. Yes, sir.

"Q. And you say in this article, speaking of an attorney of this bar, 'If this attorney really wants to see the new law enforced (the liquor law is here meant), why not assist the court instead of making such defense of flagrant violations of the law, and using his talents to destroy the law and its supporters? A. I think that they don't have to defend if they don't want to.

"Q. Mr. Murphy, you are highly prejudiced against liquor violations, and think if an indictment or charge is brought against them that they should be convicted whether guilty or not, don't you? A. Well, I don't know.

"Q.  Don't you think, and isn't it your idea, that people charged with the violation of the liquor laws should not be acquitted by the jury or discharged by the court on constitutional questions raised in his behalf, and don't you call that a 'technicality' when he is discharged on a constitutional right? A.   Yes, sir; I don't think liquor violators should be discharged on that kind of technicality.  . . .

"Q.  You call a man's defense based on a fundamental right of the Constitution of the state a technicality, don't you? A.   Yes, sir.

"Q.  And, while you were sitting in the courtroom as a part of a committee to assist the state in enforcing the liquor laws, you heard Mr. Henry Johnson, an attorney at this bar, raise a constitutional question, and saw the learned trial judge sustain the motion and discharge the prisoner because of unlawful search and seizure, and this happened in the Bailey case, and that's what you are talking about in this article printed November 16th, when you said, 'I saw cases thrown out of court on what seemed to me infinitesimal technicalities?' A.   I don't know the lawyer, but I heard a case like that, and suppose that was what I was talking about.

"Mr. Murphy, you said in this article, 'I am specially interested in seeing the law strictly enforced in reference to the Eighteenth Amendment,' and you are so 'interested' that you will go to any length to convict, won't you? And didn't  you mean by 'strict enforcement' to convict every defendant charged with the violation of the liquor law? A.   I think most of them charged are guilty.  I don't think there is much question about that.

"Q.  If a defendant is charged with the illegal possession of liquor, and if the proof shows it was obtained, that is all the evidence against him, by illegal search and seizure, you are of the opinion that he should be convicted aren't you? And you will convict notwithstanding the manner of obtaining the evidence, won't you? A.   If he had the liquor, I will.

"Q. Aren't you so prejudiced against law violators, and so satisfied in your own mind that you are biased in these cases, that you state twice in this article, 'Who Knows Where The Blow Will Fall,' that you do not believe that this attorney that you were writing about will let you 'or any other law-loving man sit on a liquor jury.'? A. Yes, sir. I believe that.

"Q. And you now acknowledge that you wrote the article in the Lexington Advertiser of November 16, 1923, entitled 'Who Knows Where The Blow Will Fall,' and that it expressed your sentiments then, and expresses your sentiments now, and you are in the same state of mind now as you were then? A. Yes, sir."

The first article appeared in the county paper under date of October 5, 1923, under the heading "Lexington Masons Pledge to Fight All Liquor Violators," and is, in part, as follows:

"We, the undersigned master masons of the city of Lexington, and of Holmes county, Miss., desiring to cooperate with and assist the county and city authorities in the elimination and suppression of the evil of the consumption and illegal manufacture, possession and traffic of intoxicating liquors, do hereby agree each with the other as follows:

"First. We, each of us will hereafter neither possess, drink, buy, sell, nor manufacture alcholic liquors in violation of law.

"Second. We solemnly promise, each to the other, that, should we have personal knowledge of the violations of the laws of the state of Mississippi, prohibiting the possession, sale, or manufacture of alcoholic or intoxicating liquors within the limits of Holmes county, Miss., we will report the same to the mayor of the city of Lexington, or to a proper officer of Holmes county, Miss.; and that we will make proper affidavit before such officer charging the offender with such violation of the law, and will on trial of such case appear as a witness, and there give testimony touching such knowledge as we may have

of such offense. And we further agree and promise, each to the other, that we will bring to the attention of the district attorney and the grand jury of Holmes county, Miss., any and all such violations of the laws of the state of Mississippi, prohibiting the possession, sale, or manufacture of alcoholic or intoxicating liquors not acted on by the courts.

"Third. That, since under our laws justice is administered from the jury box, we promise each to the other that we will be ready at all times to do jury duty when called on and eligible.

"Fourth. That, if we have reason to believe any person is engaged in the illicit sale, purchase, manufacture, or has in his possession, intoxicating liquors, we will report the same to the chairman of this body, who shall in turn have investigation made by a committee of his selection, and the said committee shall make an earnest effort to ferret out the fact in the case, and, if such evidence appears to be strong enough to bring conviction, the same shall immediately be reported to a proper officer of the municipality, county or grand jury:

"To all of this we solemnly promise each to the other, and have hereunto set our signatures as witnesses of the same."

The articles in the paper of date November 16, 1923, under the notes "Who Knows Where The Blow Will Fall?" is a rather lengthy comunication. It says, among other things:

"I was an interested spectator during the recent term of circuit court in Holmes county, I am specially interested in seeing the law strictly enforced with reference to the Eighteenth Amendment, which, in plain words, is, and is commonly known as, the liquor law.

"I saw cases thrown out of court on what seemed to me infinitesimal technicalities. I heard the testimony in one particular case, and the argument of counsel for the defendant, as well as argument by the district attorney. This case was, in my judgment, clean-cut guilt, and with-

143 Miss.—45.

out a flaw.   It was a genuine surprise to me when the
jury failed to bring in a verdict of 'guilty as charged' in
a very few minutes; instead the jury spent the night de-
bating the matter and finally reported to the court that
it was hopelessly 'hung.'

"Think of it, men and women of Holmes county!   A
man living within the borders of our county who stoops
so low as to concoct a villainous compound which he sells
to those who are willing to risk their lives for a stimu-
lant as well as to those who care not what they do or say
after they have become intoxicated with the vile stuff.

"I heard the distinguished attorney for the defense
charge that there was not a man within the sound of his
voice who did not know of his own personal knowledge
of law infractions—and his inference was very clear that
every one of them knew of instances of law breaking
with reference to the liquor law.   I heard this same at-
torney 'take a fling' at any and all organizations, and
the individual members thereof, who were in favor of
'law enforcement,' use an expression something like this:
'That it was a pretty come-off when a society or body of
men undertake to take the law in their own hands.'   He
mentioned particularly that the paper had an article in
it lately whereby a certain organization had started a
movement along this line.

"This writer happens to be a member of that organiza-
tion of master masons referred to, and he was one of its
prime movers.   This writer wishes to state that what he
did and said was done and said with the purest motives
possible to man.   He stands squarely behind the resolu-
tions (supposedly) referred to by the attorney.

"This writer believes that, if this attorney had another
case similar to the one cited above, this attorney would
never accept him as a juror.

"This writer knows nothing about 'legal ethics,' but
he is constrained to feel that no lawyer is forced to ac-
cept business he does not care to handle.   In other words,
if this attorney really wants to see the law enforced (the

liquor law is here meant) why not assist the court instead of making such defenses of flagrant violations of the law, and using his talents to destroy the law and its supporters, and turn loose on the public men who will concoct an article that makes demons out of those who drink it?

"This writer feels that he owes a duty to every man, woman, and child in the commonwealth, every little helpless child; that he should, by example and precept, use every means in his power to stamp out the lawbreakers who either sell or manufacture the stuff; and to create, instead of destroy, moral public sentiment," etc.

A juror is not disqualified from trying persons accused of crime by the fact that he is prejudiced against such crime, provided always that he is in such a frame of mind that he can listen to the evidence and decide a case fairly and impartially, without having any desire in a particular case to reach a particular conclusion prior to hearing the evidence, argument, and instructions of the court.

As a general rule, the mere fact that a person is a member of an association for the detection and suppression of crime and pays dues thereto does not necessarily disqualify him as a juror, unless the association to which he belongs is in some manner connected with and assisting in prosecuting a particular crime.

In order to be competent as a juror, a man does not have to be in sympathy with law violations. He may be very earnestly in favor of law enforcement, as indeed most jurors must be in this state, because they are required to be men of fair character, among other qualifications. The situation which confronts the country with reference to enforcing the law as to the manufacture, sale, and possession of intoxicating liquors, and the great evil that is being done, makes it commendable for all good citizens to lend their influence in a legitimate way to such laudable purposes; but a man must not go too far in his partisanship and in his desires to see convic-

tions brought about. He must at all times be willing to see the innocent acquitted and to give to the law of the land its full force in application to the specific case under the testimony.

While the manufacture, sale, and use of intoxicating liquors is one of the most potent agencies that the devil uses in inducing men into that broad road that leads to destruction, and does more to people hell with damned souls than any other single agency, and no language can be too harsh to characterize it or make its iniquities plain and patent to others, still, when a person is accused of violating the law and placed on trial in the courts therefor, he should be given the presumption of innocence and the benefit of reasonable doubt until the evidence over- comes these beneficient rules. When the minds of men are excited by the prevalence of particular evils and a de- sire to overcome them, these rules are more necessary than they are in ordinary cases, and the court should be careful to see that jurors are willing to give that fair trial which the law accords to every person.

The juror is no doubt a good citizen and a good man, and earnestly desires to see the great evils following in the wake of the illegal use of liquor eradicated, and is willing to go to all reasonable lengths to bring about a correction of these great evils. It is, of course, necessary to have, at such a time, people to agitate the public mind and to build up the public sentiment; but, when a man becomes partisan to the extent that he is unwilling to ac- cord to a defendant the benefit of his constitutional and legal rights, he is disqualified to sit in the particular case, however good he may be, and however laudable his pur- poses may be, his judgment is warped to such an extent that it is improbable that he would be able to reach a dis- interested conclusion.

The argument of the attorney specially employed in the prosecution is assigned as error, based upon his statements that at a banquet where nothing was served but water and champagne a person became so intoxicated

that he stole an overcoat, or something of that kind. The proof in the case did not specifically show by direct evidence that champagne was intoxicating, and the attorney for the defense had argued to the jury that the state had not proved that fact, and that such fact was necessary, and the argument was in answer to that of the defendant's attorney. The court condemned the practice of making statements of fact not contained in the evidence. *Martin* v. *State*, 63 Miss. 505, 56 Am. Rep. 813; *Perkins* v. *Guy*, 55 Miss. 153, 30 Am. Rep. 510.

In the case at bar, however, while nobody said that champagne was intoxicating, that fact is so notorious and patent to every intelligent man that it is doubtful if a single person who can qualify for jury service does not know that it is a fact, and the court takes judicial notice of that fact. Consequently this remark was without harmful effect.

The judgment of the court below will be reversed.

*Reversed and remanded.*